IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| Renee Jordan, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 3:13-cv-281 |
| | ) | |
| vs. | ) | |
| | ) | Judge |
| Greater Dayton Premier Management | ) | |
| | ) | |
| | ) | Magistrate |
| and | ) | |
| | ) | **PLAINTIFF RENEE JORDAN'S** |
| Dayton Metropolitan Housing Authority | ) | **MEMORANDUM IN SUPPORT OF** |
| | ) | **MOTION FOR PRELIMINARY** |
| Defendants. | ) | **INJUNCTION** |
| _____ | ) | |

## Introduction

This is a civil rights discrimination case in which Renee Jordan (hereafter "Ms. Jordan"), who has a vision impairment, seeks injunctive, declaratory and monetary relief against Defendant Greater Dayton Premier Management (hereafter "GDPM") for its denial of a reasonable accommodation request for her disability and failure to provide her equal access to the Section 8 Housing Choice Voucher Program (hereafter "Voucher Program") because of her disability.

Absent immediate court intervention, GDPM will continue to discriminate against Ms. Jordan on the basis of her disability in violation of the Fair Housing

Amendments Act (hereafter "FHAA"), Section 504 of the Rehabilitation Act (hereafter "Rehabilitation Act"), and the Americans with Disabilities Act (hereafter "ADA").

## Statement of Facts

Ms. Jordan is a blind person with a "handicap" or "disability" under the FHAA, the Rehabilitation Act, and the ADA. As a result of her disability, Ms. Jordan is unable to read written correspondence. Jordan Declaration ¶ 4. Due to her disability and limited income Ms. Jordan has relied on and been a participant in the Section 8 Housing Choice Voucher Program (hereafter "Voucher Program") operated by GDPM, and previously administered by the Dayton Metropolitan Housing Authority (hereafter "DMHA"), since 2004. *Id.* at ¶ 2.

GDPM, formerly known as DMHA, is a body corporate and politic, created and existing under the Metropolitan Housing Authority Act, Ohio Rev. Code § 3735. *See* Greater Dayton Premier Management, *Funding*, http://www.gdpm.org/about-dmha/funding.html (last visited August 7, 2013). It receives at least seventeen million dollars a year in federal financial assistance to administer the Voucher Program. *See* DMHA 5 Year Plan, Fiscal Year beginning July 2009 at 225 (available at http://www.gdpm.org/uploads/docs/5%20Year%20Plan.pdf) (last visited August 12, 2013); Greater Dayton Premier Management, *Funding*, http://www.gdpm.org/about-dmha/funding.html (last visited August 7, 2013); Complaint at ¶ 31. The Voucher Program is a federal program wherein the United States Department of Housing and Urban Development (hereafter "HUD") pays

2

rental subsidies to landlords who agree to participate in the program so that eligible families can afford decent, safe, and sanitary housing. 42 U.S.C. § 1437(a) *et seq.* (2008); 24 C.F.R. part 982 (1998).

Under the Voucher Program, GDPM issues eligible families a voucher along with correspondence which eligible families must respond to in order to remain a participant in the Voucher Program. These correspondence include the Request for Tenancy Approval (hereafter "RTA") packet, housing assistance payments (hereafter "HAP") contract and lease appointment notifications, notifications of housing quality standards inspections, recertification appointment notifications, rent change notifications, requests for family income and composition information, notices of termination, and notification of administrative due process rights. U. S. Dep't of Hous. And Urban Dev., *Voucher*, (available at http://portal.hud.gov/hudportal/documents/huddoc?id=DOC_11741.pdf.) Notifications of recertification appointments can be sent at any time, as the appointments are scheduled annually but may also occur intermittently throughout the year based on fluctuations in income and household size. *See* U. S. Dep't of Hous. And Urban Dev., *Housing Choice Voucher Guidebook* http://portal.hud.gov/hudportal/documents/huddoc?id=DOC_35622.pdf.

GDPM sends Ms. Jordan all of the above correspondence in written form. Jordan Declaration ¶ 10. Because GDPM sends all correspondence in written form rather than orally via recording on microcassette, Ms. Jordan is forced to rely on third parties in order to understand and comply with correspondence. She could at

any point in the process unknowingly miss a deadline or appointment due to the written format of the correspondence.  *Id.* at ¶ 7.  Failing to comply with correspondence or failing to appear at an appointment is grounds for termination from the Voucher Program.  24 C.F.R. § 982.551 (2010).

To avoid risk of termination, Ms. Jordan made repeated reasonable accommodation requests for GDPM to provide her with a copy of all correspondence orally via recording on microcassette tape.  Jordan Declaration ¶¶ 6, 8, 16.  She presented GDPM with a Certificate of Blindness to verify her degree of visual impairment.  *Id.* at ¶ 5.  GDPM initially agreed to accommodate Ms. Jordan but only provided her with a few microcassette tapes before reverting back to written materials.  *Id.* at ¶ 7.  GDPM failed to accommodate Ms. Jordan's disability by providing her with microcassette tapes despite the fact that the GDPM website proposes providing materials on tape as a means to comply with their federally mandated duty to increase effective communication with visually impaired tenants.  Greater Dayton Premier Management, *Section 504—Frequently Asked Questions*, http://www.gdpm.org/about-dmha/agency-performance/section-504.html (last visited July 15, 2013).

After GDPM stopped accommodating her disability Ms. Jordan again requested microcassette tapes, contacting GDPM through her counsel in both March and September of 2012. Jordan Declaration ¶ 8.  GDPM denied her most recent accommodation request on November 26, 2012.  *Id.* at ¶ 9.  GDPM's repeated failure to provide correspondence to Ms. Jordan on microcassette tape has caused her

considerable harm. When GDPM failed to send notification of rent owed on microcassette, Ms. Jordan was unaware she owed additional rent, failed to pay, and was evicted into homelessness in June 2012 as a result. *Id.* at ¶ 14. Prior to and during her period of homelessness Ms. Jordan asked GDPM for help in locating a dwelling unit. GDPM failed to provide this information in microcassette format, instead referring her to inaccessible written information on their website. *Id.* at ¶ 15. During that same period of time Ms. Jordan requested GDPM's assistance in determining the contents of an RTA packet. *Id.* at ¶ 16. GDPM again denied Ms. Jordan a microcassette recording of the official document and refused to explain the contents thereof. *Id.*

GDPM is not currently accommodating Ms. Jordan's disability by sending correspondence on microcassette. Because of this Ms. Jordan could at any point unknowingly fail to comply with correspondence necessary to remain in the Voucher Program. She is therefore suffering an ongoing risk of eviction from her current residence and termination from the Voucher Program. *Id.* at ¶ 17. Because Ms. Jordan is unable to afford market rent, termination from the housing program would result in her homelessness. *Id.* at ¶ 18-19.

Argument

**Ms. Jordan satisfies the necessary elements for this court to grant a preliminary injunction.**

"The purpose of a preliminary injunction is always to prevent irreparable injury so as to preserve the court's ability to render a meaningful decision on the merits." *United Food & Commer. Workers Union, Local 1099 v. Southwest Ohio Reg'l*

*Transit Auth.*, 163 F.3d 341, 348 (6th Cir. 1998) (citing *Stenberg v. Cheker Oil Co.*, 573 F.2d 921, 925 (6th Cir. 1978)).  When Sixth Circuit courts determine whether to grant a preliminary injunction "the focus always must be on prevention of injury by a proper order." *Id.*  That means that "if the currently existing status quo itself is causing one of the parties irreparable injury, it is necessary to alter the situation so as to prevent the injury." *Id.*  Ms. Jordan seeks this preliminary injunction in order to prevent GDPM from further injuring her by failing to accommodate her disability. She therefore seeks to enjoin GDPM in order to have equal access to the Voucher Program and to prevent future injury.

In determining whether to grant injunctive relief prior to trial, the Court must consider four factors: (1) whether the movant has a strong likelihood of success on the merits; (2) whether the movant would suffer irreparable injury if the court does not grant a preliminary injunction; (3) whether the preliminary injunction would cause substantial harm to others; and (4) whether a preliminary injunction would be in the public interest. *Leary v. Daeschner*, 228 F.3d 729, 736 (6th Cir. 2000). These four considerations are "factors to be balanced, not prerequisites that must be met." *Michigan Bell Tel. Co. v. Engler*, 257 F.3d 587, 592 (6th Cir. 2001) (citing *Six Clinics Holding Corp., II v. Cafcomp Systems*, 119 F.3d 393, 400 (6th Cir.1997)).

## I.  There is a substantial likelihood that Ms. Jordan will prevail on the merits of this case.

Ms. Jordan's complaint alleges violations of three federal civil rights statutes: the FHAA, the Rehabilitation Act, and the ADA.  There is a substantial likelihood that she will prevail on the merits of each claim.

### A. GDPM failed to reasonably accommodate Ms' Jordan's disability in violation of the Fair Housing Amendments Act.

"It is the policy of the United States to provide, within constitutional limitations, for fair housing throughout the United States." 42 U.S.C. § 3601 (1968). To further this policy, Congress passed the Fair Housing Amendments Act in 1988 to prohibit handicap discrimination. *See, e.g.,* 42 U.S.C. §§ 3604(c), (e), and (f) (1988).

The FHAA makes it unlawful to "discriminate against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection with such dwelling" on the basis of his or her handicap. *Id.* § 3604(f)(2). The FHAA prohibits discriminatory acts including "a refusal to make reasonable accommodations in rules, policies, practices, or services, when such accommodations may be necessary to afford such person equal opportunity to use and enjoy a dwelling." *Id.* § 3604(f)(3)(B).

Courts have recognized three distinct types of FHAA discrimination claims: "(1) disparate treatment; (2) disparate impact; and (3) failure to make reasonable accommodations." *Smith & Lee Assocs., Inc. v. City of Taylor*, 102 F.3d 781, 790 (6th Cir. 1996). In order to succeed on a failure to make reasonable accommodations FHAA claim, the plaintiff must prove "(1) that the plaintiff or his associate is handicapped within the meaning of 42 U.S.C. § 3602(h); (2) that the defendant knew or should reasonably be expected to know of the handicap; (3) that accommodation of the handicap may be necessary to afford the handicapped person an equal opportunity to use and enjoy the dwelling; (4) that the accommodation is

reasonable; and (5) that defendant refused to make the requested accommodation." *Overlook Mut. Homes, Inc. v. Spencer*, 666 F. Supp. 2d 850, 855 (S.D. Ohio 2009).

Ms. Jordan satisfies the first element of the FHAA claim which requires her to have a handicap as defined by the FHAA. A handicap is an impairment which "substantially limits one or more of such person's major life activities." 42 C.F.R. § 3602(h)(1). Ms. Jordan's blindness substantially limits her ability to see, which the Supreme Court has confirmed is an example of a "major life activity." *Toyota Motor Mfg., Ky., Inc. v. Williams*, 534 U.S. 184, 197 (2002).

Ms. Jordan satisfies the second element of the claim, as GDPM certainly knew of Ms. Jordan's handicap: Ms. Jordan submitted a Certificate of Blindness to GDPM, she repeatedly requested accommodations for her disability, and GDPM acknowledged her disability by briefly complying with her request. Jordan Declaration ¶¶ 5-6, 8-9, 16.

Ms. Jordan satisfies the third element of the claim, that the accommodation she requested may be necessary to afford her an equal opportunity to use and enjoy the dwelling. An accommodation is necessary when "but for the accommodation, [the plaintiff] likely will be denied an equal opportunity to enjoy the housing of their choice." *Smith & Lee Assocs., Inc.*, 102 F.3d at 795. The microcassettes Ms. Jordan requested are necessary for her to have an equal opportunity to enjoy her housing. Because Ms. Jordan is blind, she is unable to access written information critical to her continued participation in the Voucher Program. When GDPM sends her correspondence in written form, they deny her an equal opportunity to enjoy and

continue to use her dwelling. Without accommodation Ms. Jordan faces a constant risk of total loss of use and enjoyment of her dwelling, because she can at any time miss a critical correspondence, resulting in termination from the Voucher Program and eviction from her dwelling. That Ms. Jordan faces a complete denial of enjoyment is demonstrated by Ms. Jordan's previous eviction into homelessness, which was precipitated by GDPM's failure to make a reasonable accommodation to their communication policy. Ms. Jordan's requested accommodation is necessary to afford her an equal opportunity to enjoy the housing of her choice.

Ms. Jordan satisfies the fourth element of the claim, that her request was reasonable. A requested accommodation is reasonable when it does not impose a "fundamental alteration in the nature of a program" or any "undue financial and administrative burdens." *Id.* Ms. Jordan's accommodation request does not impose a fundamental alteration on GDPM's program because she has not asked GDPM to "expand the substantive scope" of the program, but rather has merely identified "an obstacle that impedes [her] access to a government program or benefit." *Am. Council of the Blind v. Paulson*, 525 F.3d 1256, 1267 (D.C. Cir. 2008). Other courts have held that a request for accessible communications is a reasonable accommodation request that does not fundamentally alter the nature of a service. *Greene Metro. Hous. Auth. v. Manning*, 1999 Ohio App. LEXIS 500 (Ohio Ct. App., Greene Cnty. 1999) (finding written notice of eviction insufficient for a blind tenant); *Williams v. Rhea*, 2012 WL 2921211 (E.D.N.Y. July 17, 2012) (denying Housing Authority's motion to dismiss on the grounds that it failed to provide

Section 8 notices in a format accessible to a tenant with impaired vision).  The reasonableness of Ms. Jordan's request is further indicated by GDPM's initial willingness to comply with the request, by the lack of undue financial or administrative burdens the accommodation places on GDPM, and by the fact that GDPM's website provides "materials on tape" as a means of ensuring effective communication with those who are visually impaired.

Ms. Jordan satisfies the fifth element, which requires that GDPM failed to make the requested accommodation, by pointing to GDPM's explicit denial of her accommodation requests.  In Summary, Ms. Jordan satisfies all five elements of the FHAA claim and is therefore substantially likely to prevail on the merits of her claim.

### B. GDPM has failed to ensure effective communication with Ms. Jordan and provide her equal access to the Voucher Program in violation of Section 504 of the Rehabilitation Act.

The Rehabilitation Act prohibits programs receiving federal funds from excluding, denying benefits to, or otherwise discriminating against qualified individuals on the basis of their handicaps.  24 C.F.R. § 8.4(a) (1988).   In order prevail under the Rehabilitation Act claim, Ms. Jordan must show that "(1) [she] is a 'handicapped person' under the Act; (2) [she] is 'otherwise qualified' for participation in the program; (3) [she] is being excluded from participation in, being denied the benefits of, or being subjected to discrimination under the program solely by reason of [her] handicap; and (4) [t]he relevant program or activity is receiving Federal financial assistance."  *Doherty v. S. Coll. of Optometry*, 862 F.2d 570, 573 (6th Cir. 1988).

Ms. Jordan satisfies the first element of the claim, which requires that she be a handicapped person. The Rehabilitation Act imports the definition of "handicapped" provided by the ADA. 29 U.S.C. § 705(9)(b) (2010). A person is handicapped when a physical impairment "substantially limits one or more" of her "major life activities." 42 U.S.C. § 12102. "Handicapped" is similarly defined in the HUD statute implementing the Rehabilitation Act. 24 C.F.R. § 8.3. Ms. Jordan's blindness substantially limits her ability to see, a major life activity under both the ADA and the HUD regulation. 42 U.S.C. § 12101(2)(a); 24 C.F.R. § 8.3.

Ms. Jordan also satisfies the second element of the claim, which requires that she be otherwise qualified for the program. That Ms. Jordan is otherwise qualified for the Voucher Program is demonstrated by her admittance into and continued participation in the program.

Ms. Jordan satisfies the third element of the claim, which requires that she be excluded from participation in the Voucher Program, denied Voucher Program benefits, or discriminated against solely due to her disability. Ms. Jordan has claims for both denial of equal access to the Voucher Program and discrimination in the form of a denial of her reasonable accommodation request. The HUD regulations implementing the Rehabilitation Act bar programs that receive federal financial assistance from denying program benefits to participants or otherwise discriminating against them. 24 C.F.R. § 8.4.

GDPM is accordingly required to "ensure effective communication" with participants with disabilities. *Id.* at § 8.6. Ensuring effective communication

11

means providing auxiliary aids when necessary, *id.* at § 8.6(a)(1), which include "audio recordings, and other similar services and devices" for vision-impaired participants like Ms. Jordan. *Id.* at § 8.3. When GDPM directed Ms. Jordan to a list of available properties on a website she was unable to access and continued to send her written correspondence, GDPM failed to "adopt suitable means to assure that the notice reaches eligible individuals with handicaps." *Id.* at § 8.28. GDPM fails to comply with communication requirements and in doing so continues to discriminate against Ms. Jordan on the basis of her handicap and denying her equal access to the benefits of the Voucher Program solely by reason of her handicap. These violations satisfy the third element of the Rehabilitation Act claim.

Finally, Ms. Jordan satisfies the fourth element, which requires GDPM to be a federally funded program. As discussed above, GDPM receives at least seventeen million dollars a year in federal financial assistance from HUD to administer the Voucher Program, and is therefore prohibited from discriminating. *Id.* at § 8.4. Ms. Jordan satisfies all of the elements of the claim and is therefore substantially likely to succeed on the merits of her Rehabilitation Act claim.

### C. GDPM has discriminated against Ms. Jordan in violation of the American with Disabilities Act.

The ADA was enacted in part to address "discrimination against individuals with disabilities" in housing, communication, and access to public services. 42 U.S.C. § 12101. GDPM has discriminated against Ms. Jordan in each of these areas. In order to prevail with an ADA claim, Ms. Jordan must establish that "(1) she has a disability; (2) she is otherwise qualified; and (3) she is being excluded

from participation in, being denied the benefits of, or being subjected to discrimination under the program solely because of her disability." *Dillery v. City of Sandusky*, 398 F.3d 562, 567 (6th Cir. 2005) (citing *Jones v. City of Monroe,* 341 F.3d 474, 477 (6th Cir. 2003)).

Ms. Jordan satisfies the first element, which requires her to qualify as disabled. A disability is "a physical or mental impairment that substantially limits one or more major life activities." 42 U.S.C. § 12102. "[S]eeing" is a major life activity. *Id.* Accordingly, Ms. Jordan's blindness is a disability.

Ms. Jordan satisfies the second element is that since she is otherwise qualified for the Voucher Program. A person is otherwise qualified for a program if, with or without reasonable accommodations or auxiliary aids, he or she "meets the essential eligibility requirements for the receipt of services or the participation in programs or activities provided by a public entity." *Id.* § 12131. As stated in the Rehabilitation Act section above, that Ms. Jordan meets the eligibility requirements as shown by her acceptance into and continued participation in the Voucher Program.

Ms. Jordan satisfies the final element by demonstrating that GDPM is either excluding her from participation in the Voucher Program, denying her of Voucher Program benefits, or discriminating against her solely on the basis of her disability. GDPM both denied Ms. Jordan equal access to the Voucher Program benefits and discriminated against her by failing to make a reasonable modification for her disability. The ADA obliges GDPM to take steps to "ensure that no individual with

a disability is excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services" unless they can demonstrate that "taking such steps would fundamentally alter" the nature of the service they offer or would result in an undue burden.  *Id.* § 12182. This means making "reasonable modifications in…procedures when the modifications are necessary to avoid discrimination on the basis of disability."  28 C.F.R. § 35.130.   Further, public entities like GDPM are required to "ensure that communications with applicants, participants, members of the public, and companions with disabilities are as effective as communications with others."  28 C.F.R. § 35.160 (2010) (imported into the ADA via 42 U.S.C. § 12134).  This requires GDPM to "furnish appropriate auxiliary aids and services where necessary to afford individuals with disabilities, including applicants, participants, companions, and members of the public, an equal opportunity to participate in, and enjoy the benefits of, a service, program, or activity."  *Id.*

GDPM has failed to comply with these statutes and regulatory requirements. In doing so they have discriminated against Ms. Jordan based solely on her disability. GDPM fails to communicate effectively with Ms. Jordan and has declined to remedy that failure by providing her with an auxiliary aid or modifying their communication procedures.  GDPM fails to demonstrate that accommodating Ms. Jordan would fundamentally alter their program.  In fact, GDPM's brief period of success in accommodating Ms. Jordan demonstrates that their program was not fundamentally altered or unduly burdened by sending Ms. Jordan microcassettes.

In summary, GDPM's failure to accommodate Ms. Jordan's disability has violated the directives of the ADA. "Being subjected to discrimination in violation of [the ADA] is itself an injury." *Williams v. Rhea*, 2012 WL 2921211 (E.D.N.Y. July 17, 2012). Therefore, GDPM's failure to communicate effectively with Ms. Jordan is discrimination satisfying the third element. Ms. Jordan satisfies all three elements and is substantially likely to succeed on the merits of her ADA claim.

**II. Absent a preliminary injunction, Ms. Jordan will suffer irreparable harm.**

The Supreme Court requires "[p]laintiffs seeking preliminary relief to demonstrate that irreparable injury is *likely* in the absence of an injunction," not just that there is a possibility of irreparable injury. *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 8 (2008). To show that irreparable injury is "likely" to occur, plaintiffs must provide "some evidence that the harm has occurred in the past and is likely to occur again." *Hudson v. Caruso*, 748 F. Supp. 2d 721, 730 (W.D. Mich. 2010) (citing *Mich. Coal. of Radioactive Material Users, Inc. v. Griepentrog*, 945 F.2d 150, 154 (6th Cir.1991).

Importantly, however, in the specific context of housing discrimination, this Court has found that "the traditional showing of irreparable harm is not required in order to grant a preliminary injunction in a Fair Housing Act case." *Cousins v. Bray*, 297 F.Supp.2d 1027, 1041 (S.D. Ohio 2003) (citing *Epicenter of Steubenville, Inc. v. City of Steubenville*, 924 F.Supp. 845, 852 (S.D. Ohio 1996)). Because of the strong national policy against discrimination in housing, "once a plaintiff has

demonstrated a likelihood of success on the merits of a claim of housing discrimination, irreparable harm will be presumed." *Id.*; *see also Chapp v. Bowman*, 750 F. Supp. 274 (W.D. Mich. 1990) (quoting *Gresham v. Windrush Partners, Ltd.*, 730 F.2d 1417, 1423 (11th Cir. 1984)) (when "housing discrimination is shown, 'it is reasonable to presume that irreparable injury flows from the discrimination'").

In addition, where a federal statute allows for equitable relief to remedy a violation, irreparable harm is similarly presumed. *Cousins*, 297 F.Supp.2d at 1041. The FHAA specifically provides for injunctive relief. 42 C.F.R. § 3614. Similarly, the ADA and Section 504 incorporate remedial statutes that include injunctive relief. The ADA imports a remedy originally established for Civil Rights Act violations and allows for injunctive relief. 42 U.S.C. § 2003a-3.

The Rehabilitation Act similarly provides for injunctive relief when intentional discrimination occurs. 29 U.S.C. § 794a; 42 U.S.C. § 2000e-5(g)(1). An act is intentional for the purposes of this remedy when it is "not accidental, inadvertent, or heedless." *Kennerly v. ARO, Inc.*, 447 F. Supp. 1090, 1100 (E.D. Tenn. 1977) (citing *Waters v. Wisconsin Steel Works of International Harvester Co.*, 502 F.2d 1309 (7th Cir. 1974)). Certainly, GDPM's repeated explicit denial of Ms. Jordan's accommodation request was intentional, as evidenced by its prior recognition of her requests and explicit denials. Since all three federal statutes allow for injunctive relief in this case, a presumption of irreparable harm is appropriate.

Furthermore, as the Sixth Circuit noted in *United States v. Edward Rose & Sons, et al.*, a court must, in deciding a motion for preliminary injunction, "balance the equitable factors, and none is a prerequisite."  384 F.3d 258, 264 (6th Cir. 2004) (citing *Washington v. Reno*, 35 F.3d 1093, 1099 (6th Cir. 1994)).  Thus, according to the Sixth Circuit, in a housing discrimination case, a demonstration of irreparable harm is not required if "[t]he other equitable factors, particularly the strong likelihood of success on the merits, outweigh any lack of irreparable harm, with or without any presumption."  *Id.*

Although Ms. Jordan is entitled to this legal presumption of irreparable harm because of the invidiousness of housing discrimination, she will very likely experience actual irreparable harm in the absence of a preliminary injunction.  Ms. Jordan's past injuries include housing discrimination, unequal access to a federally funded program, under and over payments, eviction, and homelessness. GDPM has established a continued policy, pattern, and practice of discriminating against Ms. Jordan, which will continue absent injunctive relief.  Without a preliminary injunction, she is certain to receive written correspondence that she cannot read and is therefore likely to be injured again.  This strong likelihood of future irreparable harm makes injunctive relief an appropriate remedy in Ms. Jordan's case.  The harm Ms. Jordan will face absent injunctive relief is certainly irreparable.  *Overstreet v. Lexington-Fayette Urban Cnty. Gov't*, 305 F.3d 566, 578 (6th Cir. 2002) (A plaintiff's harm from the denial of a preliminary injunction is irreparable if "it is not fully compensable by monetary damages.")

In addition to the immeasurable harm caused by discrimination, GDPM's actions also threaten Ms. Jordan with the loss of her housing subsidy, eviction, and homelessness. A presumption of irreparable harm is especially appropriate in Ms. Jordan's case, as she has suffered eviction into homelessness in the past because of the public housing authority's failure to provide correspondence in an accessible manner. Unless the court orders GDPM to accommodate Ms. Jordan's disability, GDPM will continue to discriminate against Ms. Jordan by sending her written communications that fail to accommodate her disability. Ms. Jordan is likely to be unable to comply with any communications she receives from GDPM as it insists on sending such communications in writing only notwithstanding uncontroverted evidence of her need for an alternative, accessible form of communication. Failure to comply would constitute a violation of 24 C.F.R. § 982.551 and would be grounds for termination from the Voucher Program and another eviction into homelessness. Loss of housing is an irreparable injury incapable of being adequately compensated because a person who loses housing "cannot remain in limbo while the court resolves the matter. He or she must find housing elsewhere, and once that housing is found . . . it becomes difficult to disrupt new friendships and other community ties by uprooting oneself again." *Chapp v. Bowman*, 750 F. Supp. 274, 277 (W.D. Mich. 1990).

Therefore, the irreparable harm factor of injunctive relief is both present and presumable due to the housing discrimination Ms. Jordan is experiencing, the continued threat of loss of housing, and GDPM's violation of federal statutes that

specifically provide for injunctive relief. The irreparable harm factor weighs in favor of injunctive relief.

### III. There will be no substantial harm to others from granting this preliminary injunction.

Granting this Preliminary Injunction will not cause substantial harm to others. Potential harm to Ms. Jordan from deferring any further actions in this case while this Court considers the merits of Ms. Jordan's claims is great. It causes no harm to GDPM if this Court compels it to follow established federal law. Moreover, any potential harm to GDPM is not only less than the likely harm to Ms. Jordan while this Court considers the merits of her claim, it is significantly outweighed by the serious harm of discrimination and loss of housing Ms. Jordan faces if GDPM is not enjoined from failing to accommodate her disability. Injunctive relief is required to allow Ms. Jordan equal access to the federally funded Voucher Program and prevent further injury. Therefore, the harm faced by Ms. Jordan if the preliminary injunction is denied far outweighs any harm that GDPM may suffer if the preliminary injunction is granted.

### IV. The public interest is served by granting the preliminary injunction.

Courts in the Sixth Circuit have repeatedly noted that "there is a significant public interest in eliminating discrimination against individuals with disabilities." *Deck v. City of Toledo*, 29 F. Supp. 2d 431, 434 (N.D. Ohio 1998) (citing *Thomas By and Through Thomas v. Davidson Academy*, 846 F.Supp. 611, 619 (M.D. Tenn.1994)). Compliance with the laws of this state is also unquestionably in the public interest. *Adams v. Ohio Dept. of Health*, 356 N.E.2d 324, 329 (Ohio Com.Pl.

1976).  In issuing the requested relief, this Court will serve the public interest "by vindication of [legislative] policies" embodied in federal law.  *Planned Parenthood Affiliates of Ohio v. Rhodes*, 477 F. Supp. 529, 541 (S.D. Ohio 1979).

This is not a case of competing public interests.  There is no public interest served by allowing GDPM to continue to violate the FHAA, the Rehabilitation Act, and the ADA.  On the contrary, the public interest will be served by granting the injunctive relief Ms. Jordan now seeks.

Conclusion

The balance of the four factors for issuing a preliminary injunction weighs heavily in Ms. Jordan's favor.  For the foregoing reasons, Ms. Jordan respectfully requests that her motion for a preliminary injunction be granted, enjoining GDPM to stop violating the FHA, the Rehabilitation Act, and the ADA and to provide correspondence in the manner suggested.

Respectfully submitted,

 /s/ Debra A. Lavey
Debra A. Lavey, #0073259
Trial Attorney for the Plaintiff
LEGAL AID OF WESTERN OHIO, INC.
130 West Second Street, Suite 700 West
Dayton, Ohio  45402
Phone: (937) 228-8088
Fax: (937) 449-8131
dlavey@lawolaw.org

Kerstin Sjoberg-Witt, #0076405
Kevin Truitt, #0078092
Ksjoberg-witt@disabilityrightsohio.org
ktruitt@disabilityrightsohio.org
DISABILITY RIGHTS OHIO
50 West Broad Street, Suite 1400
Columbus, Ohio 43215
Phone: (614) 466-7264
Fax: (937) 644-1888

Matthew N. Currie, #0078656
mcurrie@ablelaw.org
ADVOCATES FOR BASIC LEGAL
EQUALITY, INC.
130 West Second Street, Suite 700 East
Dayton, Ohio 45402
Phone: (937) 228-8104
Fax: (937) 449-8131

Attorneys for Plaintiff Jordan

## Certificate of Service

I hereby certify that on August 22, 2013, I served the foregoing Memorandum in Support, Declaration of Renee Jordan and *Williams v. Rhea* by leaving it with the clerk at the office of Defendants Dayton Metropolitan Housing Authority and Greater Dayton Premier Management at 400 Wayne Avenue, Dayton, Ohio 45410. I also a served the General Counsel of Greater Dayton Premier Management, Christopher Green, at the same address listed above, by hand delivery.

/s/ Debra A. Lavey
Debra A. Lavey, #0073259
Trial Attorney for the Plaintiff
LEGAL AID OF WESTERN OHIO, INC.
130 West Second Street, Suite 700 West
Dayton, Ohio  45402
Phone: (937) 228-8088
Fax: (937) 449-8131
dlavey@lawolaw.org

21