IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| Renee Jordan,<br>352 Springbrook Blvd.<br>Dayton, Ohio  45402 | )<br>)<br>) Case No. 3:13-cv-281<br>) |
| Plaintiff, | )<br>) |
| vs. | ) Judge<br>)<br>) |
| Greater Dayton Premier Management<br>400 Wayne Avenue<br>Dayton, Ohio  45410 | ) Magistrate<br>)<br>)<br>) **COMPLAINT AND DEMAND FOR** |
| and | ) **JURY TRIAL**<br>) |
| Dayton Metropolitan Housing<br>Authority<br>400 Wayne Avenue<br>Dayton, Ohio 45410 | )<br>)<br>)<br>)<br>)<br>) |
| Defendants. | )<br>)<br>) |

**I.    PRELIMINARY STATEMENT**

1. Each paragraph in this Complaint incorporates all others.

2. This is a civil rights discrimination case in which Renee Jordan (hereafter "Ms. Jordan"), who has a vision impairment, seeks injunctive, declaratory and monetary relief against Defendant Greater Dayton Premier Management (hereafter "GDPM"), declaratory and monetary relief against

Defendant Dayton Metropolitan Housing Authority (hereafter "DMHA"), and injunctive, declaratory, and monetary relief against GDPM as a successor in interest to DMHA for their denial of a reasonable accommodation request for her disability and failure to provide her equal access to the Section 8 Housing Choice Voucher Program (hereafter "Voucher Program") because of her disability

3. Ms. Jordan is a participant in the Voucher Program administered by GDPM and previously administered by DMHA.  Because she is legally blind and cannot read written correspondence, Ms. Jordan made a reasonable accommodation request to GDPM and DMHA that all correspondence to her from them is provided orally via recording on a microcassette tape.  This accommodation is necessary to allow Ms. Jordan equal access to a federally funded program.

4. GDPM and DMHA have engaged in a continuing pattern and practice of violating the Fair Housing Amendments Act (hereafter "FHAA"), Section 504 of the Rehabilitation Act (hereafter "Rehabilitation Act") and the Americans with Disabilities Act (hereafter "ADA"). The continuing violations doctrine preserves discrimination claims outside of the two-year statutes of limitations these Acts impose when the incidents are part of a larger discriminatory pattern that continued into the limitations period.

5. The actions of GDPM and DMHA violate our national policy of prohibiting discrimination based on disability.

## II. JURISDICTION

6. Jurisdiction is conferred on this court pursuant to 42 U.S.C. §§ 3613, 12188(a) and 28 U.S.C. §§ 1331, 1343 in that the claims alleged herein arise under the laws of the United States.

7. This Court has jurisdiction over Ms. Jordan's action for declaratory relief pursuant to 28 U.S.C. § 2201 and Rule 57 of the Federal Rules of Civil Procedure. Injunctive Relief is authorized by 42 U.S.C. § 3613, 29 U.S.C. § 794a, 42 U.S.C. § 12133, 28 U.S.C. § 2203 and Rule 65 of the Federal Rules of Civil Procedure.

8. Venue is proper under 28 U.S.C. § 1391(b) in that the unlawful conduct that gives rise to these claims occurred within the Southern District of Ohio.

## III. PARTIES

9. Since 2004, Ms. Jordan has participated in the Voucher Program initially administered by Dayton Metropolitan Housing Authority and currently administered by GDPM. Ms. Jordan has a vision impairment sufficient to qualify her as a person with a "handicap" or "disability" under the FHAA, the Rehabilitation Act, and the ADA.

10. Defendant GDPM is a body corporate and politic, created and existing under the Metropolitan Housing Authority Act, Ohio Revised Code Chapter 3735. On information and belief, it began receiving federal financial assistance to administer the Voucher Program on October 26, 2011. Upon information and belief,

GDPM is also a successor in interest to DMHA and is therefore liable for DMHA's actions.

11. Defendant DMHA is a body corporate and politic, created and existing under the Metropolitan Housing Authority Act, Ohio Revised Code Chapter 3735. On information and belief, it received federal financial assistance to administer the Voucher Program until October 26, 2011.

### IV. STATEMENT OF FACTS

12. Ms. Jordan is an individual with a disability/handicap; she is legally blind and as the result of this disability cannot read written correspondence.

13. Ms. Jordan became a participant in the Voucher Program administered by DMHA in 2004.

14. On information and belief, on October 26, 2011 GDPM became a successor in interest to DHMA.

15. Ms. Jordan is currently a participant in the Voucher Program administered by GDPM.

16. The Voucher Program is a federal program wherein the United States Department of Housing and Urban Development (hereafter "HUD") pays rental subsidies to landlords who agree to participate in the program so that eligible families can afford decent, safe, and sanitary housing. This program is authorized by the U.S. Housing Act of 1937, 42 U.S.C. § 1437a *et seq.* and implementing federal regulations, 24 C.F.R. Part 982.

17. Under the Voucher Program, public housing authorities like GDPM and DMHA issue eligible families a voucher along with a Request for Tenancy Approval (hereafter "RTA") packet. These documents are both provided in writing. A family is eligible to have the public housing authority subsidize up to 70% of their rent in the private market with federal funding it receives from HUD.

18. Once the family selects an eligible rental unit, the family must return the completed RTA packet to the public housing authority, who then determines if the rent is reasonable, checks on ownership of the rental unit and verifies property tax information. If the property meets the foregoing, the public housing authority schedules an inspection of the rental unit. The family is notified of the inspection through written correspondence.

19. After an inspection is completed, the public housing authority provides the family with a housing inspection report in writing. If the rental unit fails to meet housing quality standards, the family is notified of this in writing along with a date of the second inspection.

20. When the rental unit passes the inspection, the public housing authority notifies the family of this in writing. The public housing authority schedules an appointment with the family for lease and Housing Assistance Payment (hereafter "HAP") Contract signing. Again, the public housing authority notifies the family of these appointments in writing.

21. Once the lease and HAP Contract are signed, the public housing authority begins making housing assistance payments to the landlord in

5

accordance with the terms of the HAP Contract. Under this program, the public housing authority will recertify a family's eligibility at least annually and, depending on any change in income or household composition, more often than annually. Families are notified of any recertification appointments and any documents that they must provide to the public housing authority through written correspondence.

22. Families are permitted to move to a new unit with continued assistance under the program. When they do so, the steps outlined above are followed. The public housing authority is required to adopt suitable means to assure that the notice of available properties reaches eligible individuals with disabilities. 24 C.F.R. § 8.28.

23. If a participant violates any family obligation as set forth in 24 C.F.R. § 982.551, such as failing to attend recertification appointments, missing inspections or failing to report changes in income or household composition, the public housing authority can terminate the participant from the Voucher Program. The public housing authority notifies participants of such termination, along with their right to appeal, in writing.

24. Ms. Jordan's disability predates her 2004 entry into the Voucher Program then administered by DMHA. Her disability was not initially accommodated.

25. Since 2004 Ms. Jordan has made numerous reasonable accommodation requests for all correspondence, including those mentioned in paragraphs 17-23

that are provided in writing, to be provided to her orally via recording on microcassette tape. For example, in 2009 Ms. Jordan requested correspondence be sent orally via microcassette.

26. DMHA initially complied with Ms. Jordan's reasonable accommodation request and provided her with a few correspondences on microcassette tape. After initially complying, DMHA stopped sending correspondence on microcassette tape and reverted back to sending written correspondence.

27. When DMHA stopped providing correspondence on microcassette tape, Ms. Jordan again renewed her request for DMHA to provide all correspondence on microcassette tape. DMHA failed to do so.

28. Through her counsel, Ms. Jordan contacted DMHA's successor GDPM in March and September 2012 and stated that she was not receiving correspondence from GDPM on microcassette tape.

29. On November 26, 2012, GDPM denied Ms. Jordan's most recent reasonable accommodation request.

30. DMHA and GDPM's failure to provide correspondence to Ms. Jordan on microcassette tape has caused her considerable harm. For example:

>   a. When DMHA reduced Ms. Jordan's rent amount it failed to communicate this with her on a microcassette tape. As the result, Ms. Jordan continued to pay the higher rent amount to her landlord in violation of Voucher Program rules.

    b. In June 2012, Ms. Jordan was forced to move from her rental unit. Her landlord had filed an eviction against Ms. Jordan for nonpayment of rent. Ms. Jordan was unaware of her portion of the rent because GDPM had failed to provide this information to her on microcassette tape. As the result of these events, Ms. Jordan became homeless.

    c. Prior to and during the period of Ms. Jordan's homelessness, Ms. Jordan asked GDPM for help with locating a dwelling unit. GDPM failed to provide her a current listing of known accessible housing units on a microcassette tape or assist her in locating an available accessible dwelling unit. Further, GDPM referred Ms. Jordan to a list maintained on its website, an act that did Ms. Jordan no good as she could not see the list to read it.

    d. Prior to and during the period of Ms. Jordan's homelessness, Ms. Jordan asked GDPM for explanation of the RTA packet and its contents. GDPM refused to comply with 24 C.F.R. § 8.28 by explaining or reading to Ms. Jordan the RTA packet and refusing to provide the RTA packet on a microcassette tape.

31. Upon information and belief, GDPM receives at least seventeen million dollars a year in federal financial assistance to administer the Voucher Program.

HUD is the principal source of its funding. Greater Dayton Premier Management, *Funding*, http://www.gdpm.org/about-dmha/funding.html (last visited July 24, 2013).

32. Currently, GDPM is not providing Ms. Jordan with correspondence on microcassette tape or in any other format that is accessible to her, despite the fact that the GDPM website proposes providing materials on tape as a means to comply with their federally mandated duty to provide effective communication with visually impaired tenants. Greater Dayton Premier Management, *Section 504—Frequently Asked Questions*, http://www.gdpm.org/about-dmha/agency-performance/section-504.html (last visited July 15, 2013).

33. The foregoing constitutes a continuing policy, pattern, and practice of discriminating by GDPM and DMHA against Ms. Jordan in failing to accommodate her disability and ensure equal access to the Voucher Program.

## V. CLAIMS FOR RELIEF

**First Claim for Relief**
**Violation of the Fair Housing Amendments Act**
**42 U.S.C. § 3604(f)(3)**

34. The Fair Housing Amendments Act provides that it is the policy of the United States, within its constitutional limits, to provide for fair housing throughout the country.

35. Ms. Jordan has a handicap; she is vision-impaired and cannot read written words.

36. GDPM and DMHA are aware of Ms. Jordan's handicap: Ms. Jordan has provided them with a Certificate of Blindness detailing her vision impairment and they previously accommodated Ms. Jordan by providing some correspondence to her on microcassette tape.

37. Ms. Jordan made a reasonable accommodation request of GDPM and DMHA to provide all correspondence from them to her on microcassette tape.

38. The requested reasonable accommodation is necessary to provide Ms. Jordan with equal opportunity to participate in the Voucher Program administered by GDPM and DMHA.

39. GDPM and DMHA denied Ms. Jordan's reasonable accommodation request to provide all correspondence from them to her on microcassette tape, despite the fact that GDPM's website proposes providing materials on tape as a means to comply with their federally mandated duty to increase effective communication with visually impaired tenants.

40. Ms. Jordan's reasonable accommodation request is reasonable in that it neither imposes an undue financial or administrative burden on GDPM or DMHA, nor does it fundamentally alter the nature of the program currently administered by GDPM and formerly administered by DMHA.

41. GDPM and DMHA have continued their policy, pattern, and practice of discriminatory housing practices with the denial of Ms. Jordan's reasonable accommodation request.

42. Ms. Jordan is an "aggrieved person" as she has been and will continue to be injured by GDPM's discriminatory housing practices and has been injured by DMHA's discriminatory housing practices.

**Second Claim for Relief**
**Denial of a Reasonable Modification in Violation of**
**Section 504 of the Rehabilitation Act**
**29 U.S.C. § 794**

43. Section 504 of the Rehabilitation Act of 1973, as amended, prohibits discrimination against qualified individuals with disabilities by recipients of federal financial assistance.

44. GDPM receives federal financial assistance within the meaning of the Rehabilitation Act. On information and belief, DMHA received federal financial assistance within the meaning of the Rehabilitation Act until October 26, 2011.

45. Ms. Jordan requested that GDPM and DMHA provide all correspondence to her on microcassette tape, a reasonable modification to their policies and practices regarding communication with Voucher Program participants.

46. GDPM and DMHA have denied this reasonable modification request.

47. Further, as a recipient of federal financial assistance, GDPM is and DMHA was required under the Rehabilitation Act to ensure effective communication with the beneficiaries of the Voucher Program it administers with federal financial assistance.

48. GDPM and DMHA have failed to ensure effective communication with Ms. Jordan. For example, GDPM has failed to provide Ms. Jordan lists of available

11

accessible units known to it and has failed to assist Ms. Jordan in locating an available accessible dwelling unit.

49. Ms. Jordan is an otherwise qualified individual with a disability who, solely because of her disability, is being subjected to discrimination by GDPM's discriminatory administration of the Voucher Program. Specifically, as the result of GDPM's failure to communicate with Ms. Jordan in a manner that is accessible to her, she is being discriminated against solely because of her vision impairment.

50. Ms. Jordan has been injured by GDPM and DMHA and will continue to be injured as a result of GDPM's continued policy, pattern, and practice of discrimination.

### Third Claim for Relief
### Denial of a Reasonable Modification in Violation of the Americans with Disabilities Act
### 42 U.S.C. § 12132

51. The Americans with Disabilities Act prohibits any public entity from discriminating against a qualified individual with a disability.

52. Title II of the ADA applies to any state or local government, or its instrumentalities, including local public housing authorities. GDPM and DMHA are bodies corporate and politic, created and existing under the Metropolitan Housing Authority Act, Ohio Revised Code Chapter 3735.

53. By denying Ms. Jordan's reasonable modifications request, GDPM and DMHA violated Ms. Jordan's rights under the ADA. GDPM continues to violate Ms. Jordan's rights under the ADA and is failing to administer its Voucher Program in a manner consistent with its ADA obligations.

54. Ms. Jordan has been injured and will continue to be injured as a result of GDPM and DMHA's discrimination against her.

### Fourth Claim for Relief
**Denial of Equal Access in Violation of Section 504 of the Rehabilitation Act**
**29 U.S.C. § 794**

55. Ms. Jordan is a qualified individual with a disability or handicap within the meaning of the Rehabilitation Act and is qualified to receive the benefits and services of GDPM and DMHA.

56. GDPM and DMHA's housing services, rental assistance programs, and Voucher Programs are "programs or activities" within the meaning of the Rehabilitation Act.

57. Through practices such as failing to provide crucial program information in formats that are accessible, refusing to communicate information in ways that Ms. Jordan could understand, and other acts, GDPM and DMHA have excluded Ms. Jordan from participating in, denied her the benefits of, and/or subjected her to discrimination in its programs, services, and/or activities.

58. Ms. Jordan has been injured and will continue to be injured by GDPM and DMHA as a result of their denial of equal access to their programs, services and/or activities.

### Fifth Claim for Relief
**Denial of Equal Access in Violation of the Americans with Disabilities Act**
**42 U.S.C. § 12132**

59. The ADA prohibits GDPM and DMHA from excluding individuals with disabilities from participation in or from denying them the benefits of their services

on account of disability. The ADA prohibits GDPM and DMHA from providing aid or services that do not afford individuals with disabilities equal access and opportunities as provided to others.

60. Housing Choice Vouchers are portable and transferrable from one participating landlord to another. That is the unique feature of the program. A Voucher Program Participant will need to find a rental unit owned by a landlord who participates in the Voucher Program.

61. When Ms. Jordan needed a list of available Voucher Program rental units that would be accessible to her as an individual with a disability, GDPM referred her to a list maintained on its website. The website was not and is not accessible to individuals with visual impairments such as Ms. Jordan.

62. Through practices such as failing to provide crucial program information in formats that are accessible, refusing to communicate information in ways that Ms. Jordan could understand, and other acts, GDPM and DMHA have failed to provide equal access to its programs for Ms. Jordan and other individuals with disabilities, and as a result, Ms. Jordan has been injured.

## VI. PRAYER FOR RELIEF

WHEREFORE, Ms. Jordan respectfully requests that the Court grant her the following relief:

A. Enter a declaratory judgment that the foregoing acts, policies, and practices of DMHA and GDPM violate the Fair Housing Amendments Act, Section 504 of the Rehabilitation Act of 1973, and the Americans with Disabilities Act;

B.  Enter a preliminary and permanent injunction enjoining GDPM, along with its agents and employees, from continuing the discriminatory conduct described herein, and directing GDPM to grant the requested accommodation and to take all affirmative steps necessary to remedy the effects of the discriminatory conduct described herein and to prevent additional instances of such conduct or similar conduct from occurring in the future;

C.  Award compensatory damages to Ms. Jordan in an amount to be determined that would fully compensate Ms. Jordan for her injuries caused by the conduct of DMHA and GDPM alleged herein;

D.  Award punitive damages to Ms. Jordan in an amount to be determined;

E.  Award Ms. Jordan her reasonable attorney fees and costs as provided by law; and

F.  Order any such other relief as this Court deems just and equitable.

## VII. DEMAND FOR JURY TRIAL

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Ms. Jordan demands a trial by jury of all issues triable as of right.

Respectfully submitted,
 /s/ Debra A. Lavey
Debra A. Lavey #0073259
Trial Attorney for Plaintiff
LEGAL AID OF WESTERN OHIO, INC.
130 West Second Street, Suite 700 West
Dayton, Ohio  45402
(937) 228-8088 telephone
(937) 449-8131 facsimile
dlavey@lawolaw.org

        Kerstin Sjoberg-Witt #0076405
        Kevin Truitt #0078092
        DISABILITY RIGHTS OHIO
        50 West Broad Street, Suite 1400
        Columbus, Ohio 43215
        (614) 466-7264 telephone
        (614) 644-1888 facsimile
        Ksjoberg-witt@disabilityrightsohio.org
        Ktruitt@disabilityrightsohio.org

        Matthew N. Currie #0078656
        ADVOCATES FOR BASIC LEGAL EQUALITY, INC.
        130 West Second Street, Suite 700 East
        Dayton, Ohio  45402
        (937) 228-8104 telephone
        (937) 449-8131 facsimile
        mcurrie@ablelaw.org

        Attorneys for Plaintiff Jordan

## Certificate of Service

I hereby certify that on August 22, 2013, I served the foregoing by leaving it with the clerk at the office of Defendants Dayton Metropolitan Housing Authority and Greater Dayton Premier Management at 400 Wayne Avenue, Dayton, Ohio 45410. I also a served the General Counsel of Greater Dayton Premier Management, Christopher Green, at the same address listed above, by hand delivery.

        /s/ Debra A. Lavey
        Debra A. Lavey, #0073259
        Trial Attorney for the Plaintiff
        LEGAL AID OF WESTERN OHIO, INC.
        130 West Second Street, Suite 700 West
        Dayton, Ohio  45402
        Phone: (937) 228-8088
        Fax: (937) 449-8131
        dlavey@lawolaw.org